IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 12-cv-01961-RBJ

In re: GARY RONALD SCHRADER and
JEANNE MARIE SCHRADER

GARY RONALD SCHRADER and
JEANNE MARIE SCHRADER,

    Appellants,

v.

VECTRA BANK COLORADO, N.A..,

    Appellee.

## ORDER

Gary Ronald Schrader and Jeanne Marie Schrader appeal from an order issued by the United States Bankruptcy Court for the District of Colorado. Vectra Bank Colorado, NA challenged the dischargeability of defendants' debt to Vectra Bank pursuant to 11 U.S.C. § 523(a)(6). On June 18, 2012 the bankruptcy court issued oral findings of fact and conclusions of law and subsequently issued written finding of facts and conclusions of law on July 13, 2012. The court granted Vectra's complaint and ordered that Vectra Bank shall recover $29,673.85 from Mr. and Mrs. Schrader. For the reasons set forth below, this Court affirms that order.

**Facts**

In October 2003 the Schraders executed and delivered to Vectra Bank a promissory note in the amount of $670,000. The Note was secured by a deed of trust executed on the Schraders' residence located at 6697 Condor Run, Littleton, Colorado. The deed of trust covered the

property "TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property."

In 2004 the Schraders executed and delivered to Vectra Bank a home equity line of credit agreement for $240,000. This line of credit was secured by a second deed of trust pledging the same property as collateral.

In 2009 the Schraders defaulted on the note. On June 23, 2010 the property was sold to Zions Bank, the parent corporation of Vectra Bank, at a foreclosure sale. That same day the Schraders filed for bankruptcy under Chapter 7 of the U.S. Bankruptcy Code. On July 16, 2010 the Douglas County Public Trustee issued Zions Bank a Public Trustee's Confirmation Deed for the property.

Before vacating the property, however, the defendants removed light fixtures, built in appliances, two furnaces and air conditioning units, sinks, toilets and faucets. Vectra Bank filed a complaint arguing that defendants should not be discharged of their debt owed to Vectra Bank, because they willfully and maliciously caused injury to Vectra Bank.

A trial was held on July 21, 2011, December 8, 2011, January 12, 2012 and May 31, 2012. The bankruptcy court determined that Vectra Bank was the party in interest and had standing to sue on this matter. R. Vol. II at 40-41 [docket #8-2 at 40-41]. In its oral findings of fact and conclusions of law, the court held that the Schraders had willfully and maliciously injured Vectra Bank when they removed the fixtures. R. Vol. III at 25-26, 32 [#8-3 at 25-26, 32]. In its written order, the court concluded that, "defendants knew that their removal of the light fixtures, furnaces, air conditioning units and appliances would cause injury to Vectra or at least believed it was substantially certain to occur." R. Vol. II at 41 [#8-2 at 41]. Accordingly,

the court held that the debt to Vectra Bank could not be discharged, and Vectra Bank could recover from the Schraders in the amount of $29,673.85.

On appeal from that order, the Schraders argue that the court erred on five grounds: (1) in its determination that Vectra Bank had standing to pursue claims for non-dischargeability against the defendants; (2) in its determination that Vectra Bank was the real party in interest to pursue claims of non-dischargeability; (3) in its determination that the Schraders caused willful and malicious injury to Vectra Bank; (4) in its determination that Vectra Bank suffered damages as a result of the actions taken by the Schraders; and (5) in its entry of a non-dischargeable money judgment in favor of Vectra Bank against the Schraders.

**Standard of Review**

The district court may not set aside the findings of fact of a bankruptcy judge unless they were "clearly erroneous." Fed. R. Bankr. P. 8013. "A factual finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re TMA Associates, Ltd.,* 160 B.R. 172, 175 (D. Colo. 1993). Conclusions of law are reviewed de novo. *Id.*

**Conclusions**

Standing and Real Party in Interest

"[A] party has standing to prosecute a suit in federal court only if he is the 'real party in interest.'" *US Fax Law Center, Inc. v. iHire, Inc.,* 373 F. Supp. 2d 1208, 1210 (D. Colo. 2005). "Only a creditor can initiate a proceeding under 11 U.S.C. § 523(a) to determine the non-dischargeability of a debt, and that debt must be owed to that creditor." *In re Wilson*, 311 B.R. 566, 569 (Bankr. D. Or. 2004). "A creditor is an 'entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor.' A claim is the 'right to

payment, whether or not such right is reduced to judgment.'" *Id.* (quoting 11 U.S.C. § 101(5)(A) & (100(A)). "Bankruptcy courts 'must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation.'" *In re Kaiser Steel Corp.*, 998 F.2d 783, 788 (10th Cir. 1993).

The Schraders argue that Vectra Bank lacks standing to sue, because Zions Bank, not Vectra Bank, is the party that purchased the property from the foreclosure sale, and thus only Zions Bank is a creditor. Vectra Bank argues, and the bankruptcy court agreed, that Zions Bank was merely a servicer of the loan, and therefore, that Vectra Bank maintained an interest in the property as an owner of the note and creditor of the Schraders.

The relationship between lenders and borrowers can be complicated. Often, a lender will make the loan and be listed as the beneficiary on the deed of trust, but a different party will perform the loan servicing and actually receive the loan payments on behalf of the holder of the indebtedness. *See In re Roberts*, 367 B.R. 677, 685 (Bankr. D. Colo. 2007). Servicing a loan means "receiving any scheduled payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amount received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). Servicing the loan may also include the right to "make decisions concerning acceleration, foreclosure, redemption and deficiencies." *McVay v. Western Plains Service Corp.,* 823 F.2d 1395, 1398 (10th Cir. 1987).

Vectra Bank argues that Zions Bank was the servicer of the note, that Vectra Bank remained the owner of the note, and that Zions Bank purchased the property at the foreclosure sale as a servicer of the note. The bankruptcy court agreed. Under Colorado law, a "holder of an evidence of a debt" can foreclose upon a property. C.R.S. 38-38-101. A holder of an evidence

4

of a debt is defined as "the person in actual possession of or person entitled to enforce an evidence of debt." C.R.S. 38-38-100.3.  In Colorado, "a person entitled to enforce an instrument may be a holder, and need not be an owner, of the instrument." *McDonald v. OneWest Bank*, F.S.B., 680 F.3d 1264, 1266 (10th Cir. 2012).

The court stated that Gary Foster, vice president of Vectra Bank, testified during the trial that Zions Bank was the holder of the note and the servicer of the loan and that Vectra Bank was at all times the owner of the note.  Findings of Fact, Conclusions of Law and Order Entering Judgment, R. Vol. II at 40-41 [#8-2 at 40-41].  The court found Mr. Foster to be a reasonably credible witness.  R. Vol. III at 19 [#8-3 at 19].  Because the Schraders did not provide a transcript of the trial, this Court has no choice but to accept the bankruptcy court's description of the trial testimony.  The Court also defers to the trier of fact's credibility determinations.  In contrast, the Schraders "presented no evidence that Zions Bank was acting in any other capacity other than as servicing agent for Vectra." R. Vol. II at 41 [#8-2 at 41].  Accordingly, the bankruptcy court determined that Zions Bank was the holder of the note, and that Vectra Bank remained the owner of the note.

The Schraders argue that the bankruptcy court was precluded from determining that Vectra Bank was the owner of the note because of claim preclusion and the Rooker-Feldman doctrine.  Claim preclusion prevents relitigation of matters that were already decided in a previous proceeding or should have been raised in a previous proceeding but were not.  *Cruz v. Benine.* 984 P.2d 1173, 1176 (Colo. 1999).  The Rooker-Feldman doctrine prevents parties who lost in state court from relitigating the same issues or issues that are inextricably entwined to the state court judgment in federal court.  *Tal v. Hogan,* 453 F.3d1244, 1255-56 (10th Cir. 2006).

The Rooker-Feldman doctrine is limited in scope, and its preclusive effect is determined by state law. *In re Miller,* 666 F.3d 1255, 1261 (10th Cir. 2012).

The only documents in the record to which the Schraders cite to support their argument are a Notice of Election and Demand for Sale (R. Vol. I at 73-74), a Certification by Qualified Holder (R. Vol. I at 75), and a Public Trustees Certificate of Purchase (R. Vol. I at 76). These documents refer to Zions Bank as the holder of the note. As discussed above, "holder" does not mean owner of a note; a servicer can also be the "holder" of a note. The public trustee's determination that Zions Bank was the "holder" of the note is not inconsistent with the bankruptcy court's findings that Vectra Bank was the owner of the note. Further, the Schraders did not challenge the foreclosure. Thus, the issue of whether Zions Bank was an owner of the note or merely a servicer of the note was never litigated in state court and could not have been litigated without the Schraders challenging the foreclosure action. The determination that Vectra Bank owned the note is not barred by claim preclusion or the Rooker-Feldman doctrine.

As the owner of the note, Vectra Bank was a creditor that suffered an injury when the Schraders removed fixtures from the property. Accordingly, Vectra Bank is the real party in interest and has standing to bring this action under 11 U.S.C. § 523(a)(6).

Willful and Malicious Injury

Under 11 U.S.C. §523(a)(6), a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" will not be discharged  The Schraders challenge the bankruptcy court's determination that they caused willful and malicious injury to Vectra Bank in removing the fixtures.

"Willful and malicious" requires proof both that the injury was willful and that it was malicious. *In re Longley,* 235 B.R. 651, 655 (10th Cir. BAP 1999). The Supreme Court has

6

explained, "the word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998) (emphasis original). "[T]he 'willfull and malicious injury' exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur." *Via Christi Regional Medical Ctr. V. Englehart,* 229 F. 3d 1163 (10th Cir. 2000). Willful injury can be established by "evidence of both the debtor's knowledge of the creditor's . . . rights and the debtor's knowledge that the conduct will cause particularized injury." *In re Tinkler,* 311 B.R. 869 (Bankr. D. Colo. 2004).

The bankruptcy court found that "[d]efendants are sophisticated real estate professionals who have each been in the business of brokering, selling and leasing real estate for almost 20 years. In light of defendants' extensive experience, this court concludes that defendants knew that their removal of the light fixtures, furnaces, air conditioning units and appliances would cause injury to Vectra or at least believed it was substantially certain to occur." R. Vol. II at 42 [#8-2 at 42]. This finding was further supported by the court's finding that when the Schrader's had attempted to sell the property, they had advertised that it came with the various items that they later removed before they left the property. R. Vol. II at 41-44 [#8-2 at 41-44]. Based on its review of the record, this Court finds that the bankruptcy court's findings that the Schraders knew or at least believed that their actions would cause injury to Vectra Bank were not clearly erroneous. This is a proper application of the test for whether an injury is willful and malicious.

Further, as indicated above, the court explicitly found in its oral ruling that the Schraders had willfully and maliciously injured Vectra Bank when they removed the fixtures. R. Vol. III at

25-26, 32 [#8-3 at 25-26, 32]. This finding, for the same reasons as were provide in respect to the written findings, is supported by evidence in the record and was not clearly erroneous.

Accordingly, the bankruptcy court did not err in determining that the Schraders willfully and maliciously injured Vectra Bank.

Damages

Finally, the Schraders argue that the bankruptcy court erred when it determined that Vectra Bank suffered damages and entered a non-dischargeable money judgment in favor of Vectra Bank. The Schrader's argument is based on the premise that Vectra was an unsecured creditor and did not own the property. This is the same argument that the Schraders put forth in arguing that Vectra Bank did not have standing and was not a real party in interest. As discussed above, Vectra Bank owned the note and was therefore the party that was injured by the Schrader's actions.

**Order**

Because the Court finds that the bankruptcy judge's findings of fact were not clearly erroneous, and because the Court finds that the bankruptcy judge's conclusions of law and entry of a non-dischargeable money judgment were factually supported and legally sound, the order of dismissal is hereby AFFIRMED.

DATED this 13th day of February, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge